IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ATLANTIC CASUALTY INSURANCE
COMPANY                                                                    PLAINTIFF

v.                                Case No. 1:16-cv-1002

CM SELLERS, LLC; KYLER JOHNSON; and
POTLATCH LAND & LUMBER, LLC                                    DEFENDANTS

MEMORANDUM OPINION

Before the Court are cross-motions for summary judgment filed by Plaintiff Atlantic Casualty Insurance Company ("ACIC") (ECF No. 32) and Defendant Potlatch Land & Lumber, LLC ("Potlatch") (ECF No. 35). Responses have been filed. ECF Nos. 39, 42. The parties have filed replies. ECF Nos. 42, 45. The Court finds that these motions are ripe for the Court's consideration.

BACKGROUND

Pursuant to a purchase order, Potlatch retained CM Sellers as a general contractor to replace the roof on one of its buildings at its facility in Warren, Arkansas. As part of this purchase order, Potlatch and CM Sellers entered into a contract titled "Terms and Conditions for Contractor Services." Under this contract, CM Sellers was obligated to obtain, pay for, and keep in force primary liability insurance coverage on which Potlatch and its subsidiaries were named as additional insureds. CM Sellers satisfied this contract provision with a policy of insurance, No. LI99000557 (the "Policy"), previously purchased from ACIC. CM Sellers was the named insured

under the Policy, and an endorsement named "Potlatch Forest Holdings, Inc., its parent companies, subsidiaries & affiliates" as additional insureds.[1]

To perform the roofing work under its contract with Potlatch, it appears that CM Sellers retained Richard West d/b/a West Construction as a subcontractor. West supplied Kyler Johnson, his grandson, as a laborer to CM Sellers on the Potlatch roof project. Johnson was paid by Richard West.

While working on the crew that was replacing Potlatch's roof, Johnson fell through the roof and onto the ground, sustaining injuries from the fall. Johnson subsequently filed a complaint against Potlatch Corporation and CM Sellers in the Circuit Court of Ashley County, Arkansas (referred to in this opinion as "the underlying action").[2] Johnson's suit against Potlatch seeks compensatory damages for its alleged negligence. In the underlying action, Potlatch filed a cross-claim against CM Sellers, alleging that it was given an express, contractual right of indemnity against Sellers. In the present declaratory judgment action, ACIC seeks to avoid its obligation under the Policy to defend and indemnify Potlatch against Johnson's claims in the underlying action. The parties have filed cross-motions for summary judgment.

## LEGAL STANDARDS

A. Summary Judgment Standard

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to

---

[1] Potlatch Land and Lumber, LLC ("Potlatch), is either a parent company, subsidiary, or affiliate of Potlatch Forest Holdings, Inc.
[2] Johnson initially asserted negligence claims against CM Sellers and Potlatch, but he voluntarily dismissed his claim against CM Sellers. CM Sellers had paid workers' compensation benefits to or on behalf of Johnson.

2

judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

On a motion for summary judgment, the Court must view the facts "in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987). Summary judgment is particularly appropriate where the unresolved issues are primarily legal rather than factual. *Koehn v. Indian Hills Cmty Coll.*, 371 F.3d 394, 396 (8th Cir. 2004); *see John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991) (noting that "the interpretation and construction of insurance policies is a matter of law, and therefore, such cases are particularly amenable to summary judgment").

B. Interpretation and Construction of an Insurance Contract

Under Arkansas law, which the parties agree applies in this diversity action, the Court must give effect to the plain meaning of unambiguous language in an insurance policy without resort to rules of construction. *Ohio Cas. Ins. Co. v. Union Pacific R.R.*, 469 F.3d 1158, 1162-63 (8th Cir. 2006) (applying Arkansas law). "If language is ambiguous, however, [the Court] will construe the language 'liberally in favor of the insured and strictly against the insurer.'" *Id.* (quoting *Elam v.*

*First Unum Life Ins. Co.*, 57 S.W.3d 165, 169 (Ark. 2001)). "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Elam*, 57 S.W.3d at 167.

"Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose." *Parker v. S. Farm Bureau Cas. Ins. Co.*, 292 S.W.3d 311, 315 (Ark. Ct. App. 2009). "Different clauses of an insurance contract are read together to harmonize all parts because it is error to give effect to one clause over another when the two clauses are reconcilable." *Ohio Cas.*, 469 F.3d at 1163. The Court will not adopt a construction that "neutralizes any provision of a contract" if the Court can construe the contract to give effect to all provisions. *Id*. (quoting *Smith v. S. Farm Bureau Cas. Ins. Co.*, 114 S.W.3d 205, 209 (Ark. 2003)). "The insurer bears the burden of proving as a matter of law that the insured's claim was excluded under the policy." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 986 (8th Cir. 2004) (applying Arkansas law).

C. Duty to Defend

Under Arkansas law, the duty to defend is broader than the duty to indemnify. *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 812 (Ark. 2001). In other words, where there is no duty to defend, there is generally no duty to indemnify. *See id*. As a general rule, an insurer's duty to defend is determined by the allegations in the pleadings against the insured. *Id*. Where there is a possibility that the injury or damage may fall within the policy coverage, the duty to defend arises. *Id*. at 812. "Conversely, where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend." *Id*. Although a court must resolve any doubt in favor of the insured in determining whether a complaint states a claim within the policy coverage, *Id*. at 814, courts "are not required by the rules of

4

contractual construction to stretch our imaginations to create coverage where none exists." *Pate v. U.S. Fid. & Guar. Co.*, 685 S.W.2d 530, 532 (Ark. Ct. App. 1985). Here, the Court must examine whether the complaint in the underlying action alleges facts that would come within the coverage of ACIC's Policy. If so, ACIC's duty to defend arises.

## DISCUSSION

There appears to be no dispute that, in the absence of a relevant exclusion, Johnson's claims in the underlying action would fall within the basic coverage agreement of the Policy. ACIC, however, relies on certain exclusions to disclaim coverage.

ACIC asserts that the unambiguous language of the Policy's endorsement entitled "Exclusion of Injury to Employees, Contractors and Employees of Contractors" (ECF No. 1-1, p. 62)[3] dictates that no coverage is afforded for Johnson's claims against Potlatch in the underlying action, thus relieving ACIC of its duty to defend or indemnify Potlatch. On the other hand, Potlatch argues that the language of this exclusion is ambiguous and can reasonably be interpreted as to not exclude Johnson's claims against Potlatch.

The endorsement contains two separate exclusions on which ACIC relies to disclaim coverage in this case. First, the endorsement excludes coverage for "'bodily injury' to any 'employee' of any insured arising out of the course of: (a) Employment by any insured; or (b) Performing duties related to the conduct of any insured's business." ECF No. 1-1, p. 62. Second, the endorsement excludes coverage for "'bodily injury' to any 'contractor' for which any insured may become liable in any capacity." ECF No. 1-1, p. 62. Both parties argue that there are no genuine issues of material fact as to either of these exclusions and that they are entitled to judgment as a matter of law.

---

[3] All page references to the Policy (ECF No. 1-1) refer to ECF heading page numbers (i.e., "Page 62 of 95").

5

### A. Employee Exclusion

The Court will refer to the first exclusion of the endorsement as the "employee exclusion." The employee exclusion first states that "this insurance does not apply to 'bodily injury' to any 'employee' of any insured." For the purpose of this endorsement only, the Policy defines "employee" as follows:

> "Employee" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

ECF No. 1-1, p. 62.

Potlatch argues that the Policy is ambiguous on the issue of whether ACIC must prove a direct relationship between an insured and Johnson. Potlatch argues that the employee exclusion does not apply because Johnson was not directly "hired, loaned, leased, contracted, or volunteering" by or for Potlatch or CM Sellers. Potlatch contends that, instead, Johnson was directly hired by West, who is not an insured under the Policy. Potlatch reasons that because West is not an insured, the employee exclusion does not apply to exclude coverage for Potlatch in the underlying action.

Potlatch's interpretation, however, is unreasonable and ignores the Policy's expansive definition of employee, which includes "any person . . . hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured . . . *whether or not an independent contractor*." ECF No. 1-1, p. 62 (emphasis added). According to this definition, a claimant is an employee even if he is an independent contractor of any insured, which in this case is either CM Sellers or Potlatch. Whether Johnson is an independent contractor directly hired by CM Sellers or a subcontractor is irrelevant. Under the Policy, Johnson is still any person hired or contracted for the purpose of providing services (roof replacement) to or on behalf of

Potlatch or CM Sellers as an independent contractor. As such, Johnson is an employee "of any insured." Giving effect to the plain meaning of the language in the Policy, Johnson fits under the endorsement's expansive definition of an employee.

The Court is not aware of any Arkansas case that addresses the applicability of an exclusion similar to the Policy's employee exclusion. Potlatch, however, cites to an Arkansas case in support of its argument that an additional insured's right to coverage—and the applicability of any exclusion to coverage for the additional insured—must be examined separately from those of the named insured. *Employers Mut. Liab. Ins. Co. of Wisconsin v. Farm Bureau Mut. Ins. Co. of Arkansas*, 549 S.W.2d 267, 268 (Ark. 1977). Potlatch argues that, pursuant to *Employers Mutual*, the employee exclusion at issue in the present case is ambiguous in its scope because one reasonable interpretation of the exclusion is that for each insured seeking coverage under the Policy, ACIC must prove that Johnson was an employee of that insured, and not just the named insured. In other words, Potlatch contends that ACIC cannot avoid coverage as to Potlatch by proving that the requisite employee relationship existed between Johnson and CM Sellers. Potlatch argues that, instead, ACIC must prove the requisite employee relationship existed between Johnson and Potlatch.

In *Employers Mutual*, the policy in question excluded coverage for "bodily injury to any employee of the insured." *Id*. at 267. The policy defined "insured" to mean "the named insured and, if the named insured is an individual, his spouse, and also any person while using the automobile." *Id*. It was undisputed that the claimant was an employee of the named insured, but not the unnamed insured who was an insured solely by definition and was seeking coverage under the policy. *Id*. The Arkansas Supreme Court held that the reference to "the insured" in the exclusion was ambiguous and open to contradictory interpretations. Thus, the Supreme Court held

7

that coverage was provided to an unnamed insured when the injured person is the named insured's employee.

The situation in *Employers Mutual* is distinguishable from the present case because the Policy at issue here speaks in terms of "any insured;" whereas, the policy at issue in *Employers Mutual* spoke in terms of "the insured." There is no ambiguity in ACIC's Policy, which makes clear that the employee exclusion applies if the claimant is an employee of "any insured." *See Howard & Norman Baker, Ltd.*, 75 A.D.3d 533, 535 (N.Y. 2010) ("Despite the policy provision stating that 'this insurance applies if each Named Insured were the only Named Insured,' the exclusion's reference to 'any insured' makes it unmistakably clear that the exclusion is not limited to injuries sustained by [landlord's] employees. Accordingly, since [the injured party] was an employee of one of the insureds [the tenant], his injury is not covered under the policy.").

Having established that Johnson is an employee of "any insured," the Court turns to the language in the employee exclusion requiring Johnson's bodily injuries to have "aris[en] out of or in the course of: (a) Employment by any insured; or (b) Performing duties related to the conduct of any insured's business." ECF No. 1-1, p. 62. Because Johnson was an employee of either CM Sellers or Potlatch, it follows that he was injured "in the course of . . . [e]mployment by any insured." Further, at the time of the accident, Johnson was performing roof replacement duties, which is related to CM Sellers' business as a general contractor. As such, the employee exclusion bars coverage for Johnson's claims in the underlying action, and ACIC has no duty to defend or indemnify Potlatch as to those claims.

B. Contractor Exclusion

The Court will refer to the second exclusion of the Policy's endorsement entitled "Policy's Exclusion of Injury to Employees, Contractors and Employees of Contractors" as the "contractor

exclusion." The contractor exclusion excludes coverage for "'bodily injury' to any 'contractor' for which any insured may become liable in any capacity." ECF No. 1-1, p. 62. The term "contractor" as used in the endorsement includes but is not limited to the following:

> any independent contractor or subcontractor of any insured, any general contractor, any developer, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.

ECF No. 1-1, p. 62.

There is no dispute that CM Sellers was a contractor retained by Potlatch. For purposes of this provision, ACIC asserts that Johnson, who was hired to perform a roof replacement job, was acting as either a contractor, subcontractor, or the employee of a subcontractor providing services on behalf of CM Sellers. In other words, because Johnson is either an independent contractor or subcontractor of any insured—namely CM Sellers—the Policy excludes coverage for the claims brought by Johnson against CM Sellers and Potlatch.

Potlatch argues that the contractor exclusion is ambiguous, and that the key issue in interpreting this exclusion is the phrase "for which any insured may become liable in any capacity." ACIC reads this phrase as modifying the term "bodily injury." Potlatch, on the other hand, argues that one reasonable interpretation is that this phrase modifies "contractor." In support of this contention, Potlatch cites to style manuals that state that an adjectival phrase should modify the noun or noun phrase that most closely precedes it. *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style*, at 200 (3d ed. 2013); William Strunk, Jr. & E.B. White, *The Elements of Style*, at 30 (4th ed. 2000); *Chicago Manual of Style* § 5.167 (15th ed. 2003).

The Court, however, finds Potlatch's interpretation to be unreasonable. Just because an adjectival phrase should modify the noun or noun phrase that most closely precedes it does not

9

mean that it always does. *See* Strunk, *supra*, at 200 ("Modifiers should come, *if possible*, next to the words they modify.") (emphasis added); *Chicago Manual of Style*, *supra*, § 5.167 ("A prepositional phrase with an adverbial or adjectival function should be *as close as possible* to the word it modifies to avoid awkwardness, ambiguity, or unintended meanings.") (emphasis added). In this instance, it is clear that the phrases "to any contractor" and "for which any insured may become legally liable" are both phrases meant to modify "bodily injury." Thus, the only reasonable interpretation of the contractor exclusion provides that Johnson was a contractor who suffered bodily injury for which either Potlatch or CM Sellers may become liable in any capacity. Accordingly, the contractor exclusion bars coverage for Johnson's claims in the underlying action, and ACIC has no duty to defend or indemnify Potlatch as to those claims.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's Motion for Summary Judgment (ECF No. 32) as it relates to the Policy's Exclusion of Injury to Employees, Contractors and Employees of Contractors endorsement should be and hereby is **GRANTED**.[4] Further, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 35) as it relates to the Policy's Exclusion of Injury to Employees, Contractors and Employees of Contractors endorsement should be and hereby is **DENIED.** A Judgment of even date shall issue.

**IT IS SO ORDERED**, on this 28th day of September, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[4] ACIC also argues that two additional exclusions bar coverage for Johnson's claims against Potlatch in the underlying action: (1) the exclusion for "Workers' Compensation and Similar Laws" and (2) the "Classification Limitation Endorsement." Because the Court finds that the Policy's Exclusion of Injury to Employees, Contractors and Employees of Contractors endorsement bars coverage for Johnson's claims against Potlatch in the underlying action, the Court will not address the parties' arguments in their motions regarding the two additional exclusions.